**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE**

| | |
|---|---|
| REBECCA BERRY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. _____ |
| ) | JURY DEMANDED |
| TARGET CORPORATION, ) | |
| ) | |
| Defendant. ) | |

## COMPLAINT

Comes the Plaintiff, Rebecca Berry, by and through Counsel, and for her cause of action against Target Corporation would respectfully show the following:

1. The Plaintiff is a citizen and resident of Johnson City, Tennessee, located in Washington County, Tennessee.

2. The Defendant, Target Corporation, is a foreign corporation registered to do business in the State of Tennessee. Target can be served with process through its registered agent, CT Corporation System, 800 S. Gay Street, Suite 2021, Knoxville, TN 37929-9710.

3. This is an action to recover for unlawful discrimination, harassment, and retaliation against the Plaintiff due to her sex, female, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et seq.*, and the Tennessee Human Rights Act, codified at Tenn. Code Ann. §4-21-101,. *et seq.* This Court has jurisdiction under 42 U.S.C. §2000e(f), as well as 28 U.S.C. §1331 and 1343.

4. The Plaintiff has worked for Target in Johnson City, Tennessee, for approximately eighteen years. For the past eight years, she worked in Backroom Logistics on the bulk side.

5. Ms. Berry began working with Randall Steadman in the backroom in March of 2012. She was assigned to train Mr. Steadman, and she did for a couple of weeks. During that time, Mr. Steadman engaged in behavior that made Ms. Berry very uncomfortable, including touching Ms. Berry on her hands and arms and squeezing them and rubbing her back. On one occasion, he put his arm underneath hers and rested his forearm underneath her left breast. He asked Ms. Berry to go to lunch with him three times, and she declined. When she was trying to train him, instead of listening to her instruction, he would take things out of her hands and say, "Let me do that, honey."

6. After working with Mr. Steadman for a couple of weeks, Ms. Berry went to her immediate supervisor, Barbara Savage, and told her what Mr. Steadman had been doing. Ms. Savage's response was, "Gosh, he likes you." She did not take Ms. Berry's concerns seriously.

7. Two days later, Ms. Berry went back to Barbara and asked her to take Ms. Berry's concerns to human resources. The next day, Barbara told her that she had spoken with Lauren Buble in human resources and that "it had been taken care of." Mr. Steadman was moved to the light duty side, but he was still in the backroom, and Ms. Berry still had frequent interactions with him. In addition, Barbara continued to joke about Ms. Berry's complaint, saying, "It's really too bad you and him can't work it out. Can you not forgive him? Can't you guys kiss and make up?"

8. Approximately one week later, Ms. Berry learned that her co-worker, Kelly Grindstaff, who works in Receiving, would be going on vacation. Ms. Berry normally filled in for Kelly. Barbara informed her that Mr. Steadman would take Ms. Berry's place while she filled in for Kelly, which meant that she and Mr. Steadman would be working together again in the backroom. Barbara also asked Ms. Berry if she would train Mr. Steadman for a couple of

2

days to refresh his memory. Ms. Berry told Barbara that she did not feel comfortable and did not want to spend a week working directly with Mr. Steadman. Barbara responded, "It will be perfect because he'll be right there with you all day so if he has any questions, you'll be there, and maybe you can make up." Ms. Berry complained to Barbara's supervisor, Chris Suggs, and ultimately someone else filled in for Ms. Berry.

9. Over the course of the next several weeks, Mr. Steadman continued to find reasons to come to the backroom when Ms. Berry was working. She made complaints to Lauren in Human Resources and to the store manager, Matt. She was told that Mr. Steadman had been spoken to and should not do anything else. Ms. Berry asked if Mr. Steadman could be moved out of the backroom, and Matt said he could not give an opinion on that.

10. At one point, Ms. Berry went back to where her merchandise was located in the backroom, and Mr. Steadman was standing in front of her area, changing his shirt. She complained to Matt again, and he said Mr. Steadman would be taken out of the backroom. However, when the next schedule came out, Mr. Steadman was scheduled in the backroom for the next several weeks.

11. Mr. Steadman was eventually moved out of the backroom, but he still continued to find reasons to come to Ms. Berry's area. One time when he was training a new hire, he walked by Ms. Berry and said, "Don't get too close to this one or you'll make her cry." Ms. Berry reported this to management, but nobody ever discussed it with her. Mr. Steadman continued to come back to Ms. Berry's area at every opportunity to bring her merchandise from flow, even though there were many other team members in flow who could do it. He would often block her path in the backroom and stand in front of the time clock and not let her clock in.

3

12. After Ms. Berry made numerous complaints about Mr. Steadman, she began to experience tension from Barbara. Barbara seemed annoyed with her and would not speak with her. She cut Ms. Berry's hours while giving extra hours to other employees, including Mr. Steadman. Ms. Berry used to always fill in for Kelly when she was out, but Barbara began using other employees. Barbara used a co-worker named Joe, who had to continually ask Ms. Berry how to do things, and Joe got 40 hours while Ms. Berry got 32. Barbara had previously told Ms. Berry several times that if Kelly ever left Target, Ms. Berry was her first choice for that job, which has a higher rate of pay. Barbara trained Mr. Steadman for the "in stocks" area, an area where Ms. Berry had already been trained for several years. Barbara used to let Ms. Berry do in stocks about two times per month for extra hours, but she gave those hours to Mr. Steadman. On a few occasions, Barbara specifically asked Mr. Steadman to come work in the backroom when she knew Ms. Berry was there working. Other employees even commented on the fact that Mr. Steadman was not supposed to be working in the backroom while Ms. Berry was there. Mr. Steadman replied that he was backstocking and would be there all day.

13. In October of 2012, Ms. Berry e-mailed a history of her complaints to corporate Human Resources. In November, she spoke with a lady named Amy in Human Resources. Ms. Berry explained what was happening with Mr. Steadman and that she felt that Barbara was retaliating against her. Amy dismissed Ms. Berry's complaints and told her that Mr. Steadman must be more aggressive in trying to seek out extra hours than she was. She told Ms. Berry that Ms. Berry was assuming too much about why she was not getting extra hours and being able to fill in for Kelly in Receiving like she used to. Ms. Berry pointed out that none of those things happened until after she complained about Mr. Steadman. Amy said that Mr. Steadman could not be denied hours in other areas, but Ms. Berry pointed out that the areas in which he was

4

getting extra hours were areas in which she had been trained and had previously received extra hours. She never heard anything back from Amy.

14. In December, Lauren from Human Resources spoke with Ms. Berry and told her she knew that Ms. Berry had spoken with Amy and that Mr. Steadman would continue to be scheduled in the backroom and other areas that required him to be in the backroom, but they would try not schedule him when Ms. Berry was working. Nothing was mentioned about the fact that Ms. Berry was no longer getting the hours and extra work she used to get. The interactions with Mr. Steadman continued, and he continued to be scheduled to work at the same time as Ms. Berry.

15. At the end of April, Ms. Berry received her annual review from Barbara, and it was the worst review she had ever received. Barbara told Ms. Berry she'd had an "emotional upheaval" that year. Ms. Berry received an overall rating of "excellent" by Barbara's supervisor, Kris, but when Barbara actually put the marks down on the review, she gave Ms. Berry scores that would have only had Ms. Berry at "efficient." Barbara said she gave Ms. Berry low marks because of Ms. Berry's "emotional issues."

16. Ms. Berry went to the store manager and explained what Barbara had done, and the manager told her she would get a new review.

17. Eventually, Mr. Steadman quit, but Ms. Berry continues to work with Barbara and continues to receive the cold shoulder from her.

18. On August 13, 2013, Ms. Berry filed a Charge of Discrimination with the Equal Employment Opportunity Commission. A copy of that charge is attached as <u>Exhibit A.</u>

5
Case 2:14-cv-00123-JRG-DHI   Document 1   Filed 04/14/14   Page 5 of 8   PageID #: 5

19. On January 14, 2014, the Equal Employment Opportunity Commission issued a Notice of Right to Sue. The Plaintiff received the Notice on January 17, 2014. A copy of the Notice of Right to Sue is attached as Exhibit B.

20. The Plaintiff, a member of a protected class, was subjected to unwelcome sexual harassment by Mr. Steadman. This harassment was based on the Plaintiff's sex, female. The harassment created a hostile, offensive, or intimidating work environment that was severe and pervasive. The Plaintiff reported the harassment to her supervisor, to management, and to Human Resources, but the harassment was not remediated. Thus, the Defendant knew of the charged harassment but failed unreasonably to take prompt and corrective action.

21. The Plaintiff engaged in protected activity by making a complaint of sexual harassment against a co-worker. Shortly after the Plaintiff made her complaints, she began receiving the cold shoulder from her supervisor, began receiving less hours than the person she accused of harassment, and ultimately received an inaccurate performance review. These actions were taken in retaliation for the Plaintiff having engaged in protected activity, i.e., for having filed a complaint of discrimination.

22. The Defendant's failure to promptly correct and remediate the sexual harassment and the Defendant's retaliation against the Plaintiff were intentional, reckless, and malicious.

23. The Defendant's actions of allowing the Plaintiff to be subjected to unwelcome sexual harassment, failing to promptly address the Plaintiff's complaints of unwelcome sexual harassment and take corrective action, and retaliation against the Plaintiff, as set forth more fully above, constitute unlawful discrimination, harassment, and retaliation against the Plaintiff in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et seq*. and the Tennessee Human Rights Act, Tenn. Code Ann. § 41-21-101, *et seq*.

PREMISES CONSIDERED, the Plaintiff prays:

1. That process be issued and served upon the Defendant requiring it to answer within the time proscribed by law;

2. That a jury of twelve be empaneled to hear this action;

3. That, following a trial of this matter, judgment be entered for the Plaintiff on her claims of sex discrimination, harassment, and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et seq.*, and the Tennessee Human Rights Act, § 41-21-101, *et seq.*, enjoining the Defendant from engaging in such unlawful employment practices and awarding the Plaintiff compensatory damages, including but not limited to damages for lost wages, lost benefits, lost interest on wages and benefits, emotional distress, embarrassment, humiliation, and other incidental and consequential damages and expenses in the amount of $150,000.00, and punitive damages in the amount of $150,000.00, to be determined at trial pursuant to 42 U.S.C. §1981a, together with such equitable relief as the Court deems appropriate;

4. That the Plaintiff be awarded all costs associated with the prosecution of this action, including a reasonable attorney's fee and expert fees, in accordance with 42 U.S.C. §2000e-5(k); and

5. That the Plaintiff be awarded such further and general relief as the equities of this cause may require and the Court may deem just and proper.

*/s/ Kristi M. Davis*
KRISTI M. DAVIS (#019487)
Attorney for the Plaintiff
Hodges, Doughty & Carson, PLLC
P.O. Box 869
Knoxville, TN 37901-0869
(865) 292-2307
(865) 292-2321 [facsimile]
kdavis@hdclaw.com

7
Case 2:14-cv-00123-JRG-DHI   Document 1   Filed 04/14/14   Page 7 of 8   PageID #: 7

## COST BOND

      We hereby acknowledge and bind ourselves for the prosecution of this action and payment of all non-discretionary costs in this Court, which may at any time be adjudged against the plaintiff/petitioner in the event the plaintiff/petitioner shall not pay them. Witness My Hand this 14th day of April, 2014.

                                      */s/ Kristi M. Davis, its Member*
                                      HODGES, DOUGHTY & CARSON, SURETY
                                      617 W. Main Street
                                      P.O. Box 869
                                      Knoxville, TN 37901-0869
                                      (865) 292-2307